1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10 RODNEY BROOKS, | Case No. 1:11-cv-01503-AWI-DLB PC |
| 11       Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT'S |
| 12   v. | MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| 13 HAROLD TATE, | |
| | [ECF No. 63] |
| 14       Defendant. | |
| 15 _____/ | OBJECTION DEADLINE: THIRTY DAYS |

16

17 **I.      Background**

18          Plaintiff Rodney Brooks ("Plaintiff"), a state prisoner proceeding pro se and in forma

19 pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on August 29, 2011.  This

20 action is proceeding against Defendant Harold Tate ("Defendant") for acting with deliberate

21 indifference to Plaintiff's medical needs in violation of the Eighth Amendment of the United

22 States Constitution, and for retaliation in violation of the First Amendment of the United States

23 Constitution.

24          On December 9, 2013, Defendant filed a motion for summary judgment.  (ECF No. 63.)

25 After obtaining an extension of time, on October 8, 2014, Plaintiff filed an opposition.  (ECF No.

26 76.)   Defendant filed a reply (ECF No. 77) on October 15, 2014, and his motion has been

27

28

1   submitted upon the record without oral argument.[1]  Local Rule 230(*l*).  For the reasons set forth

2   below, the Court recommends that Defendant's motion be granted on the ground that he did not

3   act with deliberate indifference or retaliate against Plaintiff.

4   **II.      Legal Standard**

5           Any party may move for summary judgment, and the Court shall grant summary judgment

6   if the movant shows that there is no genuine dispute as to any material fact and the movant is

7   entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted);

8   *Washington Mutual Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position,

9   whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular

10  parts of materials in the record, including but not limited to depositions, documents, declarations,

11  or discovery; or (2) showing that the materials cited do not establish the presence or absence of a

12  genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.

13  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the

14  record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); *Carmen*

15  *v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v.*

16  *Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

17          Defendant does not bear the burden of proof at trial and in moving for summary judgment,

18  he need only prove an absence of evidence to support Plaintiff's case.  *In re Oracle Corp.*

19  *Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S.

20  317, 323, 106 S.Ct. 2548 (1986)).  If Defendant meets his initial burden, the burden then shifts to

21  Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial."  *In re*

22  *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex Corp.*, 477 U.S. at 323).  This requires Plaintiff to

23  "show more than the mere existence of a scintilla of evidence."  *Id.* (citing *Anderson v. Liberty*

24  *Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

25          However, in judging the evidence at the summary judgment stage, the Court may not make

26

27  ───────────────
    [1] Concurrently with his motion for summary judgment, Defendant served Plaintiff with the requisite notice of the
    requirements for opposing the motion.  *Woods v. Carey*, 684 F.3d 934, 939-41 (9th Cir. 2012); *Rand v. Rowland*, 154
28  F.3d 952, 960-61 (9th Cir. 1998).

1  credibility determinations or weigh conflicting evidence, *Soremekun v. Thrifty Payless, Inc.*, 509

2  F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all

3  inferences in the light most favorable to the nonmoving party and determine whether a genuine

4  issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v.*

5  *City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted),

6  *cert. denied*, 132 S.Ct. 1566 (2012).  The Court determines *only* whether there is a genuine issue

7  for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se

8  prisoner. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations

9  omitted).

10  **III.    Plaintiff's Claim**[2]

11       Plaintiff is incarcerated at California State Prison, Sacramento.  He was incarcerated at

12  California Correctional Institution, Tehachapi, at the time he filed his complaint which is where

13  the events at issue occurred.

14       Plaintiff states he filed several grievances because of continuing lower back pain running

15  down his right leg due to pain in his left knee.  He states an MRI revealed that he has a mild disc

16  bulge in his lower back and he was diagnosed with suspected degenerative disc disease due to

17  previous radiation treatment for cancer.  As a result, a neurologist prescribed him Nortriptyline for

18  nerve pain.  After having a nauseous reaction to the medication, he was prescribed the medication

19  Neurontin.

20       A second doctor issued an order giving him a cane in order to take pressure off of his knee

21  and lower back when he walked.

22       A third doctor examined him and issued him a hinge knee brace and ordered an MRI of his

23  knee.  The MRI revealed that he had a complex medial meniscus tear in his left knee.

24       A fourth doctor prescribed him Tramadol for his knee and referred him to an orthopedic

25

26  [2] Plaintiff's complaint is verified and his allegations constitute evidence where they are based on his personal
knowledge of facts admissible in evidence.  *Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004).  The
27  summarization of Plaintiff's claim in this section should not be viewed by the parties as a ruling that the allegations
are admissible.

28

1   surgeon for surgery on his left knee.

2          A fifth and sixth doctor gave him the option of physical therapy and issued orders to attend

3   physical therapy.  Plaintiff opted not to have surgery to his knee.

4          Sometime later, Plaintiff filed a medical grievance requesting to be referred to an

5   orthopedic doctor to be refitted with a hinge knee brace because the current brace no longer fit and

6   caused discomfort.  Plaintiff also requested to be seen by a neurologist because the medication

7   Neurontin was having no effect.

8          As a result of his grievance, Plaintiff was seen by Defendant Tate.  Tate informed Plaintiff

9   that he would not be referring him to anyone.  He advised Plaintiff that he had surgery on his right

10  knee and had a back condition worse than Plaintiff's, and Plaintiff was just a complainer.  Plaintiff

11  told Tate that he was going to pursue a complaint because there was no reason he should have to

12  experience unnecessary pain based on a comparison of his medical problems to Defendant's.

13  Plaintiff states Defendant then told him that "since you want to threaten me with a lawsuit," he

14  would and did take away his hinge knee brace and cane, canceled his physical therapy, refused to

15  issue his prescribed pain medications, and canceled his medical grievance on the false assertion

16  that had threatened him with a lawsuit to gain access to services and equipment that he was not

17  entitled to.

18         Plaintiff filed a grievance in response to the actions of Defendant Tate.  As a result, he was

19  seen by an orthopedic specialist who issued an order recommending that he be issued an ultrawrap

20  hinge knee brace and cortisone injections for pain.  Defendant Tate refused to allow Plaintiff to

21  receive the ordered treatment from the specialist.  As a result of Defendant's retaliatory actions,

22  Plaintiff's right knee hurts more than his left knee from having to compensate for having to walk

23  without a cane or knee brace.  He states his sciatic pain hurts worse than it ever has before because

24  Defendant canceled his Tramadol pain medication and would not provide him any medication to

25  assist with his sciatic nerve pain.

26  **IV.    Undisputed Facts**

27  1.     Plaintiff is currently an inmate incarcerated with the California Department of Corrections

28  and Rehabilitation (CDCR).

4

1  2.      Plaintiff was housed California Correctional Institution in Tehachapi, California (CCI)

2  during the relevant time period.

3  3.      Defendant Harold Tate, M.D., was a licensed physician and surgeon in the State of

4  California.

5  4.      Prior to joining the CDCR in 2004, Dr. Tate's medical practice focused largely on

6  orthopedics and neurology.[3]

7  5.      Plaintiff has a medical history that includes chronic back pain, pain in both knees, syncopal

8  episodes, and testicular cancer.

9  6.      In May 2010, an MRI of Plaintiff's left knee showed that he had a minor, complex tear of

10  the posterior horn medial meniscus.[4] The "complex" nature of the tear is due to it having vertical

11  and horizontal components to the tear and not a reference to the severity of the tear.

12  7.      Plaintiff testified that he injured his left knee jumping from a bunk to a stool sometime in

13  2007 and 2008 while at the San Diego County Jail.

14  8.      On June 9, 2010, Dr. Lee evaluated Plaintiff for a followup on his various conditions,

15  including his chronic back pain and left knee pain.

16  9.      Dr. Lee found that the MRI test results for Plaintiff's lower back and left knee did not

17  support a need for a prescription for Gabapentin or the use of a cane.

18  10.     In July 2010, Dr. Clark renewed an order for his cane and ordered a mobility vest and

19  Tramadol (Ultram) per Plaintiff's request.

20  11.     Plaintiff was evaluated by orthopedist Dr. Taylor in July 2010 and it was recommended

21  that he have arthroscopic surgery for his left knee.

22  12.     The arthroscopic surgery was scheduled for August 17, 2010 but Plaintiff refused to have

23  the surgery without a guarantee that there would be no complications.

24  13.     In September 2010, PA Bingamon issued an order for a cane, hinged knee brace, a physical

25

26  [3] Plaintiff argues that Defendant is not board certified in orthopedics or neurology.  Plaintiff's assertion fails to dispute
the fact that Defendant's practice prior to 2004 focused on orthopedics and neurology.

27  [4] Plaintiff complains that Defendant is attempting to trivialize his knee condition as "minor." As a licensed medical
doctor who reviewed Plaintiff's medical records and treated Plaintiff, Defendant is qualified to render an opinion as to

28  the severity of his knee condition.  Fed. R. Evid. 702; ECF No. 63, Tate Dec., ¶7.  Plaintiff submits no admissible
evidence to dispute the doctor's classification.

1  therapy (PT) referral and increased his pain medication prescription, Gabapentin.

2  14.    Less than two weeks later, Plaintiff refused to take his prescription for Gabapentin as he

3  claimed it tasted terrible and did not work.

4  15.    On October 26, 2010, Plaintiff had his first physical therapy appointment per Bingamon's

5  referral.

6  16.    On October 27, 2010, Plaintiff was seen by Defendant for a follow-up medical

7  appointment.  Defendant noted that Plaintiff elected to try physical therapy instead of the

8  recommended surgery for his left knee. Defendant also noted that Plaintiff had trials of

9  Gabapentin, Indomethacin and Methocarbamol for pain control with poor results.

10  17.    Following the October 27, 2010, appointment, Defendant prescribed the continuation of

11  physical therapy, maintenance of Tramadol and added prescriptions for Naproxen and

12  Cyclobenzaprine.[5] Naproxen is a nonsteroidal anti-inflammatory medication commonly used to

13  treat mild to moderate pain along with joint stiffness.

14  18.    Plaintiff was examined on December 15, 2010, by Dr. Allen regarding his medical and

15  appeal issues. In addition to medication, Plaintiff was also seeking a new knee brace. Dr. Allen

16  noted that Plaintiff's knee brace was in good condition. Dr. Allen also noted that Plaintiff was

17  satisfied with the physical therapy for his knee.  Dr. Allen found no indications or objective

18  findings to support Plaintiff's request for medication or a new brace.

19  19.    On December 29, 2010, Plaintiff filed another Health Care Appeal regarding Dr. Allen's

20  denial of his request for a new knee brace and requested to be seen by a neurologist for nerve pain.

21  20.    On January 19, 2011, Defendant examined and interviewed Plaintiff regarding his appeal

22  about his knee brace and nerve pain. Defendant also reviewed Plaintiff's medical records.

23  21.    During the interview, Defendant advised Plaintiff that his test results and Dr. Allen's

24  examination did not support the need for a neurological referral and an orthopedic referral for

25
26  [5] Plaintiff attempts to dispute this fact by alleging that Defendant did not continue Tramadol on October 27, 2010, but elected to wean Plaintiff off Tramadol instead.  Defendant does not dispute that he was attempting to wean Plaintiff off Tramadol by adding Naproxen and Cyclobenzaprine at that time, but this does not change the fact that Defendant
27  continued Tramadol on that occasion.  Plaintiff's allegation that Defendant ordered Tramadol discontinued on that date is not supported by any evidence.  Plaintiff's admits that he continued to take Tramadol after he filed his medical
28  appeal on November 23, 2010, and Defendant's notes of October 27, 2010, state his orders were to "continue physical therapy to completion, while maintaining Tramadol."  Pl.'s Decl. Opposing Summ. J., ¶3 and Ex. D.

1   treatment of his knee or a new knee brace.

2   22.     Plaintiff became argumentative about not getting the services he wanted and threatened a

3   lawsuit.  Defendant cancelled the appeal for lack of cooperation by Plaintiff.

4   23.     Defendant recommended that Plaintiff's chronic pain syndrome be treated with Naproxen

5   and the chronos for the cane, knee brace and mobility-impairment vest were revoked as there were

6   no objective findings to support that the items were medically necessary.

7   24.     Plaintiff did not have any mobility issues at the January 19, 2011 interview and did not

8   need a cane to walk.[6]

9   25.     On March 18, 2011, Plaintiff was evaluated and examined by Defendant for his left knee

10  pain complaints. Defendant counseled Plaintiff again on the benefits and risks of surgical

11  intervention.

12  26.     Defendant completed another written request for services for Plaintiff to be seen by Dr.

13  Taylor for a pre-surgical orthopedic evaluation.

14  27.     On May 10, 2011, Plaintiff was evaluated by orthopedic surgeon Dr. Taylor, who again

15  recommended arthroscopic surgery on Plaintiff's left knee.

16  28.     Plaintiff changed his mind again regarding the arthroscopic surgery on his left knee and

17  requested Dr. Taylor prescribe him a hinged knee brace.

18  29.     On May 24, 2011, Defendant met with Plaintiff following the orthopedic referral

19  appointment. Defendant suggested to Plaintiff that he continue conservative management without

20  the use of a brace to strengthen his knee joint.

21  30.     At a June 21, 2011 clinic visit, Plaintiff had a normal gait and no observable Activities of

22  Daily Living (ADL) restrictions. Plaintiff agreed with the recommended steroid injection and

23  requested a hinged brace.

24  31.     Plaintiff received steroid injections in his left knee on August 26, 2011.

25  32.     Plaintiff was evaluated and examined by Defendant on August 30, 2011, four days after his

26  first steroid injection. Plaintiff informed Defendant that there was minimal change. Plaintiff's gait

27  continued to be observed as normal. Plaintiff continued to insist on a hinged knee brace and

28

[6] Plaintiff purports to dispute this fact but fails to point to any admissible evidence in support.

7

1  refused the recommended pain medications.

2  33.    On September 14, 2011, Defendant examined Plaintiff again following an oncology

3  follow-up evaluation. Plaintiff complained of pain in the right posterior thigh and buttock that did

4  not radiate past the right knee. Defendant advised Plaintiff to return to the clinic within the next 30

5  days for further evaluation of his right buttock and thigh pain.

6  34.    Dr. Allen saw Plaintiff on October 5, 2011 regarding Plaintiff's complaints. Because the

7  injections did not provide the anticipated relief, Dr. Allen completed a Physician Request for

8  Services for a hinged knee brace.

9  35.    On November 21, 2011, Plaintiff was seen in the Orthotics Clinic to receive a brace for his

10  left knee. LVN Andreola observed Plaintiff ambulating and then leapt into a sitting position on the

11  exam table with no effort. Plaintiff also discussed the types of exercises he likes to do on the yard.

12  36.    On January 19, 2012, Plaintiff claimed that he lost consciousness, fell, and hit his head.

13  Plaintiff had a prior episode in losing consciousness in 2009. An EEG test was performed, which

14  was normal.

15  37.    Defendant ordered additional tests for further evaluation of Plaintiff condition.

16  38.    On February 24, 2012, Plaintiff was evaluated by Defendant and the results of the recent

17  EEG and MRI tests were shared with Plaintiff. Defendant determined a seizure disorder was

18  clinically unlikely.

19  39.    On May 19, 2012, Plaintiff began to complain of nerve spasms in his right arm. On May

20  21, 2012, Plaintiff was evaluated by Dr. Vu, who ordered x-rays of Plaintiff's right shoulder. The

21  x-rays were normal.

22  40.    On June 1, 2012, Dr. Vu again evaluated Plaintiff, who claimed he was having nerve

23  causing pain and requested narcotic-type medications Ultram, Gabapentin or Tylenol #3, which

24  has codeine. Dr. Vu found that there were no objective findings to support prescribing those

25  medications. Plaintiff was upset with Dr. Vu's findings.[7]

26  41.    On June 13, 2012, Plaintiff went to the Treatment and Triage Area, complaining of lower

27  neck and upper pain radiating to the right side which he believed was from a yoga neck stand

28
[7] Plaintiff purports to dispute this fact but fails to point to any admissible evidence to call the fact into dispute.

8

1  maneuver. Defendant evaluated Plaintiff and ordered x-rays of his cervical spine, which were

2  unremarkable.

3  42.    Chest CT and CT Scan of the neck were both negative as well.

4  43.    Plaintiff received treatment for his complaints related to his neck by various health care

5  providers, including Defendant on June 22, July 3, July 6, July 10, July 18, August 1, August 2,

6  August 24, September 12, October 8, October 25, October 30, November 9, December 24, 2012,

7  January 9, January 15, January 31, February 14, March 13, March 25, April 15, and May 19, 2013.

8  Defendant even approved chronos for Plaintiff to have an extra mattress and pillow for related to

9  his pain complaints. However, the diagnostic testing and objective observations of Plaintiff

10  provided no support for his claims.[8]

11  44.    Plaintiff was seen by several doctors regarding his right shoulder complaints and the

12  assessment of probable multilevel cervical neurovascular stenosis because of the yoga neck stands.

13  He was counseled to discontinue the neck stands and was prescribed Tramadol twice a day after

14  other factors were eliminated.[9]

15  45.    Additional physical therapy sessions for Plaintiff's right shoulder pain were approved but

16  discontinued after one session because of Plaintiff's complaints of dizziness with the TENS unit.

17  46.    Plaintiff claims that his pain medication issues resolved in December 2012 when he

18  received a tramadol prescription.

19  47.    Defendant currently treats Plaintiff at CCI for his various ailments without issue and

20  Plaintiff believes him to be an "outstanding" physician.

21  **V.     Discussion**

22       **A.     Deliberate Indifference**

23       1.    Legal Standard

24       The Eighth Amendment's prohibition against cruel and unusual punishment protects

25  prisoners not only from inhumane methods of punishment but also from inhumane conditions of

26  confinement.  *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing *Farmer v.*

27

28  [8] Plaintiff purports to dispute this fact but none of his arguments call the fact as set forth into dispute.
[9] Plaintiff purports to dispute this fact but none of his arguments call the fact as set forth into dispute.

9

1    *Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and *Rhodes v. Chapman*, 452 U.S. 337, 347,

2    101 S.Ct. 2392 (1981)) (quotation marks omitted).  While conditions of confinement may be, and

3    often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of

4    pain.  *Morgan*, 465 F.3d at 1045 (citing *Rhodes*, 452 U.S. at 347) (quotation marks omitted).

5           Prison officials have a duty to ensure that prisoners are provided adequate shelter, food,

6    clothing, sanitation, medical care, and personal safety, *Johnson v. Lewis*, 217 F.3d 726, 731 (9th

7    Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains

8    while in prison represents a constitutional violation, *Morgan*, 465 F.3d at 1045 (quotation marks

9    omitted).  To maintain an Eighth Amendment claim, inmates must show deliberate indifference to

10   a substantial risk of harm to their health or safety.  *E.g.*, *Farmer*, 511 U.S. at 847; *Thomas v.*

11   *Ponder*, 611 F.3d 1144, 1151-52 (9th Cir. 2010); *Foster v. Runnels*, 554 F.3d 807, 812-14 (9th

12   Cir. 2009); *Morgan*, 465 F.3d at 1045; *Johnson*, 217 F.3d at 731; *Frost v. Agnos*, 152 F.3d 1124,

13   1128 (9th Cir. 1998).

14          For claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical

15   need by demonstrating that failure to treat [his] condition could result in further significant injury

16   or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the

17   need was deliberately indifferent."  *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012)

18   (citing *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).  Defendant does not argue that

19   Plaintiff's knee condition did not present an objectively serious medical need and therefore, the

20   Court's focus is limited to whether Defendant acted with deliberate indifference to Plaintiff's knee

21   condition.

22          Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a

23   prisoner's pain or possible medical need, and (b) harm caused by the indifference."  *Wilhelm*, 680

24   F.3d at 1122 (citing *Jett*, 439 F.3d at 1096).  The requisite state of mind is one of subjective

25   recklessness, which entails more than ordinary lack of due care.  *Snow v. McDaniel*, 681 F.3d 978,

26   985 (9th Cir. 2012) (citation and quotation marks omitted); *Wilhelm*, 680 F.3d at 1122.

27          2.    Analysis

28          Plaintiff's claim against Defendant arises out of Plaintiff's disagreement with the course of

10

1   treatment prescribed by Defendant to address Plaintiff's complaint of continued knee and neck

2   pain.  A mere difference of opinion between Plaintiff and Defendant regarding medical treatment

3   does not give rise to a claim under section 1983.  *Snow*, 681 F.3d at 987-88; *Wilhelm*, 680 F.3d at

4   1122-23; *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).  Rather, Plaintiff must show

5   that the course of treatment chosen was medically unacceptable under the circumstances and that it

6   was chosen in conscious disregard of an excessive risk to Plaintiff's health.  *Jackson v. McIntosh*,

7   90 F.3d 330, 332 (9th Cir. 1986) (quotation marks omitted); *accord Snow*, 681 F.3d at 987-88.

8          Plaintiff has a history that includes chronic back pain, pain in both knees, syncopal

9   episodes, and testicular cancer.  A May 2010 MRI of Plaintiff's left knee showed that he had a

10  minor, complex tear of the meniscus, which Plaintiff states was caused by an injury jumping from

11  a bunk to a stool in 2007 or 2008.  Dr. Lee evaluated Plaintiff's back and knee pain on June 9,

12  2010, but determined a prescription for Gabapentin or the use of a cane was not warranted.  In July

13  2010, Dr. Clark renewed an order for Plaintiff's cane, ordered a mobility vest, and prescribed

14  Tramadol at Plaintiff's request.  Plaintiff was also evaluated in July 2010 by Dr. Taylor, who

15  recommended arthroscopic surgery.   Surgery was scheduled for August 17, 2010, but Plaintiff

16  refused.  In September 2010, PA Bingamon issued an order for a cane, hinged knee brace, physical

17  therapy and additional pain medication (Gabapentin).  Plaintiff discontinued Gabapentin because

18  he stated it tasted terrible and didn't work.  On October 26, 2010, Plaintiff attended his first

19  physical therapy appointment.

20         On October 27, 2010, Plaintiff was seen by Defendant.  Defendant noted that Plaintiff had

21  elected not to have surgery and instead opted for physical therapy.  Defendant further noted that

22  Plaintiff had trials of Gabapentin, Indomethacin, and Methocarbamal for pain control, with poor

23  results.   Following the appointment, Defendant ordered continuation of physical therapy,

24  maintenance of Tramadol, and addition of Naproxen and Cyclobenzaprine.

25         On December 15, 2010, Plaintiff was seen by Dr. Allen.  Plaintiff was seeking medication

26  and a new hinged knee brace.  Dr. Allen found no objective findings to support additional

27  medication or a new hinged knee brace.  Plaintiff appealed the denial.

28         On January 19, 2011, Defendant evaluated Plaintiff concerning his knee brace and nerve

1   pain.  Plaintiff did not exhibit any mobility issues at the interview.  Defendant advised Plaintiff

2   that based on the test results and Dr. Allen's examination, he determined that Plaintiff's condition

3   did not support a referral to a neurologist or orthopedist, or the issuance of a new hinged knee

4   brace.  Plaintiff voiced his disagreement and chose not to cooperate.  Defendant canceled the

5   medical appeal for lack of cooperation by Plaintiff.  Defendant recommended treatment of the

6   chronic pain syndrome with Naproxen.  The chronos for the cane, knee brace, and mobility-

7   impairment vest were revoked, since Defendant determined they were not medically necessary.

8          On March 18, 2011, Defendant again evaluated Plaintiff for his left knee complaints.

9   Defendant advised Plaintiff on the benefits and risks of surgical intervention and completed a

10  written request for Plaintiff to be seen by Dr. Taylor for a pre-surgical orthopedic evaluation.  On

11  May 10, 2011, Dr. Taylor again recommended arthroscopic surgery.  Plaintiff did not want

12  surgery and again asked for a hinged knee brace.

13         On May 24, 2011, Defendant met with Plaintiff.  Defendant suggested that Plaintiff

14  continue conservative management without the use of a brace in order to strengthen his knee joint.

15         On June 21, 2011, Plaintiff was seen in a clinic.  He was observed to have a normal gait

16  with no restrictions.  Plaintiff agreed to recommended steroid injections.  He again requested a

17  knee brace.

18         On August 26, 2011, he received steroid injections in his left knee.

19         On August 30, 2011, he was evaluated regarding the injections.  He informed Defendant

20  that there was minimal change.  Plaintiff insisted on a hinged knee brace and refused the

21  recommended medications.

22         On September 14, 2011, Defendant again examined Plaintiff concerning thigh and buttock

23  pain. Defendant advised Plaintiff to return within the next thirty days for evaluation of his pain.

24         On October 5, 2011, Dr. Allen saw Plaintiff.  Because the injections had not provided the

25  necessary relief, Dr. Allen requested a hinged knee brace.

26         On November 21, 2011, Plaintiff was seen in the Orthotics Clinic for fitting of a new brace

27  for his left knee.  LVN Andreola observed Plaintiff leap into a sitting position on the exam table

28  with no effort.

1    On January 19, 2012, Plaintiff claimed he lost consciousness, fell, and hit his head. An

2  EEG test was performed with normal results. Defendant ordered additional tests. On February

3  24, 2012, Defendant evaluated Plaintiff and shared the results of the additional EEG and MRI

4  tests. Plaintiff was advised that a seizure disorder was unlikely.

5    On May 19, 2012, Plaintiff began complaining of nerve spasms in his right arm. Dr. Vu

6  evaluated Plaintiff on May 21, 2012, and x-rays of Plaintiff's right shoulder were taken, with

7  normal results.

8    On June 1, 2012, Dr. Vu again evaluated Plaintiff. Plaintiff complained of nerve pain and

9  requested narcotic medications Ultram, Gabapentin and Tylenol #3. Dr. Vu determined there were

10 no objective findings to support prescribing such medications.

11    On June 13, 2012, Plaintiff complained of neck and upper back pain which he believed had

12 been caused by a yoga neck stand maneuver. Defendant ordered x-rays, which were

13 unremarkable. Chest and neck CT scans were also conducted with normal results.

14    Plaintiff continued to receive treatment for his complaints by various health care providers

15 from June 2012 through May 2013. All diagnostic testing and objective observations were

16 negative. Eventually, when all other factors were ruled out, it was determined that Plaintiff

17 probably suffered multilevel cervical neurovascular stenosis because of the yoga neck stands. He

18 was advised to discontinue the neck stands and prescribed Tramadol.

19    In summary, Plaintiff raises no triable issues of fact regarding the appropriateness of

20 Defendant's chosen course of treatment for Plaintiff's knee and neck conditions. *See Snow*, 681

21 F.3d at 987 (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)) (difference of opinion

22 between medical professionals does not amount to deliberate indifference). Accepting as true that

23 Plaintiff wanted a prescription for Tramadol to manage his knee and neck pain as well as a new

24 hinge knee brace, but Defendant determined that Tramadol and a new brace were not medically

25 necessary, Plaintiff's disagreement with Defendant over the method of treatment is insufficient to

26 create a triable issue of fact regarding whether Defendant's actions rose to the level of deliberate

27 indifference. *See Snow*, 681 F.3d at 987-88; *Wilhelm*, 680 F.3d at 1122-23; *Franklin v. Oregon*,

28 662 F.2d 1337, 1344 (9th Cir. 1981). As noted above, multiple doctors recommended the same

1    course of treatment as chosen by Defendant.  Defendant has met his burden of setting forth

2    evidence demonstrating that the course of treatment he chose was medically acceptable under the

3    circumstances, which shifts the burden to Plaintiff to submit admissible evidence showing that the

4    course of treatment chosen by Defendant was medically unacceptable and that it was chosen in

5    conscious disregard of an excessive risk to Plaintiff's health.  Plaintiff has not done so.

6           As a lay witness, Plaintiff is not qualified to render an opinion that Defendant should have

7    prescribed certain types of pain medication or medical devices, and that Defendant's failure to do

8    so was in contravention of acceptable medical standards.  Fed. R. Evid. 701, 702.

9           In sum, the record demonstrates that Plaintiff's complaints regarding his knee were

10   repeatedly and appropriately addressed by prison medical staff, including Defendant.  Plaintiff's

11   mere disagreement with the course of treatment chosen by Defendant does not support a claim

12   under the Eighth Amendment, and Defendant is entitled to summary judgment.  *Snow*, 681 F.3d

13   987-88.

14           **B.**      **Retaliation**

15           1.      Legal Standard

16          Allegations of retaliation against a prisoner's First Amendment rights to speech or to

17   petition the government may support a section 1983 claim.  *Silva v. Di Vittorio*, 658 F.3d 1090,

18   1104 (9th Cir. 2011); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham*

19   *v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).

20   "Within the prison context, a viable claim of First Amendment retaliation entails five basic

21   elements: (1) An assertion that a state actor took some adverse action against an inmate (2)

22   because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

23   exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

24   correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *accord Watison v.*

25   *Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012); *Silva*, 658 at 1104; *Brodheim v. Cry*, 584 F.3d

26   1262, 1269 (9th Cir. 2009).  Prisoners have a protected right to file prison grievances, *Watison*,

27   668 F.3d at 1114; *Brodheim*, 584 F.3d at 1269, and the mere threat of harm can be sufficiently

28   adverse to support a retaliation claim, *Brodheim*, 584 F.3d at 1270.

1           2.      Analysis

2           Plaintiff complains that Defendant cancelled his medical appeal, took away his knee brace,

3    cane, and medication, discontinued physical therapy, and wrote Plaintiff up in retaliation for

4    threatening to file a complaint against him.  Plaintiff fails to establish that Defendant took any

5    adverse action against him.  Defendant and other treating doctors had determined that the knee

6    brace and cane were not medically necessary.  Defendant and other treating doctors also

7    determined that a prescription for Tramadol was not medically necessary.  Further, it is undisputed

8    that the medical appeal was cancelled due to Plaintiff's failure to cooperate.  As to physical

9    therapy, the evidence submitted shows Defendant did not discontinue physical therapy treatments.

10   Rather, Defendant ordered that Plaintiff continue with the three weeks of physical therapy that had

11   been previously ordered.  Thus, there is no triable issue of fact whether Defendant retaliated

12   because the evidence shows Defendant did not take any adverse action against Plaintiff.

13          In addition, the evidence shows that Defendant's actions were appropriate medical

14   decisions.  The relief Plaintiff was seeking was not supported by his medical records, diagnostic

15   tests, or objective observations.  Thus, there is no causal connection between Defendant's conduct

16   and Plaintiff's exercise of his First Amendment rights.

17          In summary, Plaintiff fails to establish a genuine issue of material fact exists with respect

18   to several elements such that a trial is warranted on his claim of retaliation.  Therefore, Defendant

19   is entitled to summary judgment.

20          **C.     Qualified Immunity**

21          Qualified immunity shields government officials from civil damages unless their conduct

22   violates "clearly established statutory or constitutional rights of which a reasonable person would

23   have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982).  "Qualified

24   immunity balances two important interests - the need to hold public officials accountable when

25   they exercise power irresponsibly and the need to shield officials from harassment, distraction, and

26   liability when they perform their duties reasonably," *Pearson v. Callahan*, 555 U.S. 223, 231, 129

27   S.Ct. 808 (2009), and it protects "all but the plainly incompetent or those who knowingly violate

28   the law," *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986).

1    As the Court has found that no constitutional violation has occurred, it need not further

2  discuss the issue of qualified immunity.

3  **VI.    Conclusion and Recommendation**

4    For the reasons set forth above, the Court HEREBY RECOMMENDS that Defendant's

5  motion for summary judgment, filed on December 9, 2013, be GRANTED, thus concluding this

6  action in its entirety.

7    These Findings and Recommendations will be submitted to the United States District

8  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).   Within

9  **thirty (30) days** after being served with these Findings and Recommendations, the parties may

10  file written objections with the Court.   Local Rule 304(b).   The document should be captioned

11  "Objections to Magistrate Judge's Findings and Recommendations."   Any response to the

12  objections must be filed within **ten (10) days** from the date of service of the objections.   Local

13  Rule 304(d).   The parties are advised that failure to file objections within the specified time may

14  waive the right to appeal the District Court's order.   *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

15  1991).

16

17  IT IS SO ORDERED.

18    Dated:    __October 29, 2014__          /s/ *Dennis L. Beck*

19                          UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28

16